The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. Be seated, please. This morning we're convening court in a bifurcated fashion. Judge Richardson and I are here and Judge Agee is joining us on Zoom. And so if you get a question from Judge Agee, you'll be able to see him, I think, on the screen over here on the side. I think it works fine. All right. First case we'll call is Flores-Turcios v. Bondi and Ms. Valera. Oh, we're hearing you remote, too. Yes, Your Honor. Okay, that's fine. Okay, good. You may begin. May it please the Court, good morning, Your Honors. Thank you again for this opportunity to present my case before this Honorable Court. My name is Hernando Valera and I represent the petitioner Eric Turcios. This petition, Your Honors, challenges the Board of Immigration Appeals' affirmance of the immigration judge's denial of asylum, withholding of removal and protection under the Convention Against Torture. The Board's decision must be vacated because it rests on three fundamental legal errors. First, Your Honors, the Board applied the wrong standard of review when evaluating whether the petitioner's proposed particular social group were legally cognizable, applying clear error review instead of de novo review, which is contrary to HCFR 1003.1D-3 and this Court's precedent. Even, Counsel, even if you were correct on that, the IJ and the BIA went ahead and ruled on the nexus question. So why couldn't we just go directly to that? Yes, Your Honor. The reason for this is it would be unfair for the Court to affirm the decision of the agency where the agency itself applied the very wrong standard for legal analysis and evaluation of this case. But I will discuss the issue of why the Board misapplied the nexus requirement. The error in conducting the petitioner's membership in a social group was not a central reason for the persecution. Instead, the Board characterized the gang's motive as purely economic extortion or recruitment. But the INA, Your Honors, requires only that a protected ground be one central reason. And as this Court has held in Paris v. Garnet, decision of the Fourth Circuit Court in 2021, a protected ground need only be one central reason among several motivations. And that has been the ruling in JBN and SM, recognizing that persecution... Right, but the gangs, Counsel, the gangs in that country want money from everybody. Why is this particular petitioner any different? Yes, Your Honor, the records pertain that he testified, the petitioner testified that gangs want to recruit everyone who is young, and I am no exception. Now, this testimony is supported by the country conditions evidence demonstrating that young people are systematically targeted by gangs for recruitment. Thus, the record, Your Honors, supports the inference that the petitioner was targeted because he was young, refusing recruitment, Your Honor. So is that under your theory, does that mean that everybody in a particular age group is entitled to admission into the United States for asylum and withholding of removal? Your Honor, even if this Court reaches the merits, I do submit that the petitioner's group here is cognizable, and the BIA misapplied asylum law in this case because... Right, I understand that part, but if we assume that your group was correct, that's a pretty large chunk of people. It seems like the logical end of your argument would be all of them would be eligible for admission to the United States. No, Your Honor, because the group is particular. The board concluded that the term youths or adolescents were too amorphous, but the Guatemalan statutory framework provides precise age parameters, eliminating any alleged ambiguity, Your Honor. That definition of the group is with respect to a particular statute of some kind. The question is whether in this case it is something that is recognized by the public that it was acted on as a group. It's a very amorphous term. Who's adolescent? I mean, even the statutory age wouldn't be what I would call adolescent. I think it's anybody's judgment as to what adolescence is. Youth is just as... I mean, somebody age 35 could be youthful to a person who's 65, and a person 7 years old could be youthful. I don't know if there's any suggestion that action being taken against somebody because they are youthful, it's more that it's an opportunity, but there doesn't seem to be a recognition such that causation could even apply. But, Your Honor, even the record contains specific evidence that under Guatemalan law it defines youth between ages 13 and 13, and specifically the Guatemalan legislation divides youth... Is it your view that the Guatemalan law defines U.S. immigration law? So if we looked at a different country and it defined youth to be 18 to 21, and that's in Brazil, so that would be the group in Brazil. We look to the law of the foreign country to determine how U.S. immigration law works? Again, I'm not sure I follow why you think that's as persuasive or controlling as you seem to think. No, Your Honor. What we're saying here is membership in a group can be determined objectively through the birth records and the legal documentation, and it is not only the Guatemalan law. There is UNESCO policy... No, no, but tell me why the Guatemalan law... I don't understand why Guatemalan law matters at all, right? So if Guatemalan law identified adolescence at any given age, I mean, you know, if they picked it from 12 to 16 or any other set of numbers we want to pick, if for some given Guatemalan purpose they choose to define adolescence as 13 to 30, I guess I don't understand why that has any sort of relevance or pertinence to us in determining whether you've identified a particularized social group. Because, Your Honor, this is a substantially country conditions evidence where it recognizes youth as a distinct social category requiring protection. And furthermore, Your Honors, the government... I mean, intuitively a person age 30 would hardly be someone you would think of when you're talking about the youth of the country. I mean, age 30 is youthful in a certain context, but age 30 is a mature person too. I don't know what the age to vote in Guatemala is or what the age of majority is, but it's a strange bracket from age 13 to age 30. And then to say that the public, we have to conclude that a group defined that constitutes adolescence, it's somewhat counterintuitive, isn't it? Your Honor, the point that I would like this Court to consider is if the Board failed to meaningfully analyze this evidence, which I believe constitutes a reversible error, it meets all the requirements pertaining to particular social group on immutability, particularity, and social distinction. The sources that I have cited principally demonstrate the social visibility within society which the Board failed to meaningfully analyze as part of the substantial standard evidence. So what... Can you tell me what it is... So assume for a minute, hypothetically, that I think a law in a country that identifies adolescence as 13 to 30 is like no evidence at all that those are adolescents or that that qualifies as a social group. Tell me what the other evidence you would like us to look at beyond this law that for some circumstances identifies adolescence as 13 to 30. What is the other evidence that you think we should be looking at? Your Honor, I think what is clear in the Board's decision is that as an integral part of our submissions, it was established fact that the MS-13 robbed him at gunpoint, beat him, and threatened to kill him if he refused to cooperate with them or if he contacted the police. And they also attempted to force him into gun membership and threatened to harm his family if he resisted. So this conduct was not a random street crime. It was a coercive violence designed to force submission to gun authority. What the government is suggesting is that because guns target many young men, the persecution not nexus. But persecution, Your Honors, does not... But you understand... I mean, maybe this is your point, right? But you understand, like, that's not responsive to the question of what is the evidence that we identify adolescence as 13 to 30 other than this, you know, particularized foreign countries law. Those other things might be evidence of something, but it doesn't tell us anything about whether this is a particularized social group. Well, I do believe that relevant here is the UNESCO Youth Policy Reports regarding protection of youth. And these are international documentations within which... And if I go to those, what I will find is that they define adolescence as 13 to 30? There is a definition on that focusing on that age bracket, Your Honor. For 13 to 30, UNESCO defines adolescence or youth as 13 to 30. That's your representation. So having said that, with the group being particular, I would submit that the terms youth or adolescence are not broad, are not overbroad. They are not amorphous. But once again, the board did not even reach that because of applying the wrong standard of review. They mentioned clear error, and that is not what is called for. There has to be a de novo review of this particular legal question. Anything further? So, Your Honor, because the board applied the wrong standard of review and failed to conduct the required legal analysis under asylum and the Convention Against Torture, the petitioner here requested the court vacate the board's decision and remand the case to the agency for proper adjudication under this guideline. And this court well knows that remand would be the appropriate remedy when the agency's decision rests on improper legal framework or incomplete analysis. And for this reason, we respectfully request, Your Honors, that the court vacate and remand for proper adjudication. All right, thank you. All right, we'll hear from Ms. Begay. Good morning, Your Honors. May it please the court, Sharza Begay for the Attorney General. The petition for review in this case should be denied because the record evidence does not compel reversal of the agency's denial of the applications for relief in this case, which were based on gang-related incidents he experienced in Guatemala. With respect to the asylum and withholding claims, they fail based on the agency's independently dispositive nexus finding here. Turning to the past incidents that he experienced, the agency reasonably concluded that the gang was motivated by purely criminal reasons, specifically to increase their size and power. The record shows, based on the petitioner's testimony, asylum application, written statement, that the gang was targeting everybody in his town. He specifically stated several times that everyone was targeted. He was no exception. Counsel, just to be sure what we're going to deal with here, the government did not address the particular social groups. Is that correct? That's correct, Your Honor. Under your view, then, we go directly to nexus. Yes, correct. It's our position that it's not necessary given the dispositive nexus finding, which is very clear on the record. And in this case, there's no indication that the individuals who targeted him said anything or suggested to any extent they were targeting him for any reason other than just criminal motivation. Does it make a difference that gang members would be in the same social group? In other words, he defines a social group as 13 to 30. Correct. And my guess is a lot of gang members fall within that group. The question is if gang members pursue him because he's in the age of 13 to 30 and they're in the very same group, what's the consequence of that? I don't believe it would make a difference, particularly here where the only motivation was to increase their size. And so there's no indication they were targeting him specifically because of age. I mean, that was his view. I mean, it would be strange for somebody in one group, in the same group, to target somebody and then have that person maintain that I'm being targeted because I'm a member of that group of which the persecutor is also in the same group. Correct. I mean, it's hard to establish any kind of nexus there, isn't it, causation, on account of, I guess, the words in the statute? Simply because of that, yeah, if that's the only basis, that would be difficult, of course. There would have to be more than that established. And in this case, there was nothing in the record that would suggest that there was anything beyond just a simple recruitment and extortion situation, which has been found to be insufficient. He was what, 28? He's 28 currently, I believe. I think at the time he was 18. Well, at that time. Or, yeah, 17, yeah, at that time. You used the phrase there, there's nothing in the record that suggests otherwise. It just seems odd, given the standard that we have. Do you think that's what we have to determine, that there's nothing in the record? Or simply that, you know, there's substantial evidence from which the agency could find that, you know, age was not a central reason. We don't have to say there's literally nothing in the record. Because the petitioner here made that sort of claim. I mean, he said, at least indirectly, that he believed that to be true. That might not be very persuasive evidence. Certainly a fact finder could discount the petitioner making the claim about what someone else's motivation was that's, you know, extremely self-interested. But we don't have to find there's nothing in the record, right? That's correct, Your Honor. Yes, it would be a substantial evidence standard. And I think that the main reason I'm referring to that is that he hasn't pointed to anything in terms of the persecutor's motives or actions in terms of that. But, of course, he is suggesting that he was targeted on that basis. That's his belief. But in terms of anything else, there's no indication that they said anything. But you're correct, Your Honor. And in terms of the future harm claim in this case, also the agency reasonably concluded that he didn't show that he would be, that there's a nexus between his claim that he would be targeted as a Guatemalan deportee. And there's nothing in the, well, not that there's nothing in the record, but that he did not show that he would be targeted because of that. And also the fact that his brother is a Guatemalan deportee and has not been harmed is also further undermining that claim. Because the record evidence doesn't compel reversal of the dispositive nexus finding, the court should uphold the asylum and withholding claims on that basis. And just turning to the CAC claim in this case, the record evidence also does not compel reversal of that claim, which was based on two, the agency based it on two independently dispositive findings. The first one was that he didn't show clear probability of future torture. With respect to that, the agency first found that he didn't show past torture. This is an issue that he waives before the court. And there's also no indication he would be targeted by gangs in the future. It's mostly speculative. And his family, including his sister, who's been extorted, has been living in Guatemala unharmed, which also further undermines his claim. Did he ever, counsel, did he ever report the incidents he describes to the local law enforcement? He did not report the incidents. And that actually goes to the second factor, which there's no indication that the authorities would have refused to help him in this case. And he doesn't really speak to that in his brief before the court. Is that argument limited here, just given the record we have, to the CAT claim? Is it what I'll call the sort of acquiescence argument? Certainly, I understand you're making that in the CAT context. At least on the record we have, the agency didn't rely on that in the asylum context. Correct. That's correct, Your Honor. Yes, it just went to the acquiescence finding. And in addition to that, the agency also found that there was sufficient evidence in the record that there's anti-gang operations and that police are investigating complaints of crime. So he didn't submit any, well, he didn't submit sufficient evidence that there would be any issues with authorities had he reported it or in the future if he were to report it. And based on these two independently dispositive findings, the record doesn't compel reversal of the CAT protection claim in this case. And if Your Honors, yes, if Your Honors don't have any other questions, the petition for review should be denied because substantial evidence supports the agency's denial of asylum and related protection. Thank you, Your Honors. Thank you. Mr. Berlar, you're muted. Maybe you could unmute yourself. May it please the Court, Your Honors, I will address three brief points in rebuttal. First, the government's characterization of the harm. Second, the agency's nexus analysis. And third, the CAT claim and the Board's legal framework. Now, there is a clear mischaracterization of the harm by the government. What matters, Your Honor, is why the persecutor targeted this individual. And the record shows that Mr. Flores-Torres was targeted because he resisted gun recruitment and control. And that was clear when he was beaten up and he refused to cooperate with them. Now, we cannot expect that he will continuously cooperate and pay what they were asking because he cannot be financing his own persecution. Second, there is a misapplication of the nexus inquiry because of the characterization that Gunn's motive was merely financial gain and recruitment. But the nexus inquiry, Your Honors, asks why the applicant was himself targeted and not simply what the persecutor wanted. Here, the record demonstrates that Mr. Torres was targeted because he was a young man whom the Gunn sought to recruit and dominate and because he refused to submit to their authority. The violence, Your Honor, and the threats, therefore, are retaliation for resisting gun recruitment. And this satisfies, Your Honor, the requirement that a protected ground be one central reason for the persecution. By reducing coercive recruitment and retaliation to mere opportunistic crime by the government, the agency failed to analyze the nexus question under the correct legal framework. Now, turning briefly to Kat, Your Honors, the government argues that Mr. Torres cannot establish government acquaintances because he did not report the gun to the police. But the law, Your Honor, does not require victims to make dangerous or futile reports in order to establish acquaintances. Mr. Flores testified that the Gunn explicitly threatened to kill him and his family if he contacted the police. And under the Kat regulations, government acquaintances includes willful blindness to torture carried out by private actors. And in circumstances where guns operate with pervasive impunity, victims reasonably fear reporting crimes. Thus, the absence of a police report does not defeat his Kat claim. Now, the government also emphasizes that Mr. Torres did not establish past torture. But Kat protection, Your Honors, is forward-looking. The question is whether torture is more likely than not in the future. Hence, the record indicates clearly death threats, beatings, forced recruitment attempts, and country conditions evidence documenting gun violence and impunity. That evidence itself demonstrates a real and substantial risk of severe harm and not speculation. Now, the government also relies on the fact that Mr. Torres' sister avoided harm by paying the gun. But that fact actually illustrates the coercive power of the gun. The gun message was clear. Either you comply or face violence. And payment temporarily avoided harm, that is true. But it demonstrates extortion backed by credible threats of violence, not safety. Finally, Your Honors, this case warrants remand because the Board, again, applied the wrong legal framework and standard of review. Rather than conducting the full legal analysis required under asylum and Kat law, the Board effectively reduced the case to ordinary crime without properly evaluating nexus, the coercive recruitment, and government acquiescence. In addition, the Board, Your Honors, adopted the immigration judge's conclusions without properly distinguishing between factual review for clear error and legal review de novo. So whether likely response of government officials amount to acquiescence or willful blindness requires legal analysis under Kat regulations and this Court's precedent. And that analysis was not meaningfully performed. And therefore, Your Honors, because clearly the Board applied the wrong standard of review and failed to conduct the required legal analysis under asylum and Kat law, then this Court must vacate the Board's decision and remand the case to the Agency for Proper Adjudication under the current... All right. Thank you. Thank you, Mr. Valero. Thank you. I know we've gone through the red light. And thank you for your argument. At this point, we'll come down and greet counsel. Mr. Valero, we can't greet you. That's our normal custom. But we accept our greetings or you accept our greetings remotely now. And we thank you for your argument. And at this point, we'll come down and greet Ms. Begay and proceed on to the next case. Thank you.
judges: Paul V. Niemeyer, G. Steven Agee, Julius N. Richardson